146 N.J. Super. 353 (1977)
369 A.2d 983
DAVID CAROFF AND GENEVIEVE CAROFF, PLAINTIFFS-APPELLANTS,
v.
LIBERTY LUMBER COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1976.
Decided February 1, 1977.
*354 Before Judges CRANE, MICHELS and PRESSLER.
Mr. Gerald H. Baker argued the cause for appellants (Messrs. Baker, Garber, Duffy & Baker, attorneys).
Mr. Robert C. Pollock, Jr. argued the cause for respondent (Messrs. Pollock, Kennedy & Brogan, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
Plaintiff David Caroff, a state park ranger employed by the Division of Forests and Parks in the New Jersey Department of Environmental Protection, appeals from an order of involuntary dismissal entered pursuant to R. 4:37-2(b) at the close of his case on liability.
Plaintiff brought this action against defendant Liberty Lumber Company (Liberty), seeking recovery for personal injuries he sustained in September 1971 as a result of Liberty's alleged breach of the duty it owed him as an occupier *355 of land. The question specifically raised on this appeal is the nature of the duty owed by an occupier of land to a governmental official who is required to enter upon the premises during the course of the performance of his public duties and whose presence thereon is therefore attributable to legal privilege rather than to the occupier's invitation. The essential issue is whether such an official is an invitee to whom is owed a duty of reasonable care or, as the trial judge concluded, merely a licensee to whom the occupier owes the lesser duty of giving warning of known but hidden perils.
Viewing the evidence and the inferences which might be reasonably drawn therefrom most favorably to plaintiff, the jury could have found the following facts:
Plaintiff was assigned in June 1970 to patrol Liberty State Park in Jersey City, then consisting of a tract of approximately 260 acres in area forming a half-mile wide strip immediately adjacent to the Hudson River. A portion of the tract had been leased by the State to defendant pursuant to a special use permit enabling it to conduct thereon a salvage business in respect of the disused bulkheads and piers and their appurtenances which remained within the park area. Liberty's operations included the dismantling of these structures, the preparation of the salvaged timber into saleable units, and the conversion of the balance into wood chips and sawdust. Its use of the premises included, among other things, a mill area as well as a warehouse building, a portion of which it used for storing heavy machinery and equipment and a portion of which, by agreement with the State, was used by plaintiff as his ranger station and personal quarters. Access to the Liberty premises was provided by a public thoroughfare known variously as Caven Point Road and Burma Road, which joined an unpaved dirt road running across at least a portion of the premises and connecting, among other locations, the mill area and the warehouse building. The jury could also have found that the use of this dirt road by Liberty's heavy equipment and *356 vehicles caused deep ruts therein, which it filled with sawdust impregnated with creosote, a wood preservative which had been used to protect the original piers. According to plaintiff's expert, creosoted timber is very slippery, especially when wet, and obviously not reasonably or properly usable as a road-filling material.
The jury could have further found that plaintiff's duties included the patrolling not only of the state-occupied park area, but also of all leased premises in order to assure that the lessees were complying both with the terms of their respective special use permits and with applicable state and local ordinances and regulations. Plaintiff, of course, was present daily on Liberty's premises, not only to regularly patrol and inspect them but also to use the ranger station, to which he returned several times a day to make a telephone report to his superiors. He inevitably was aware of Liberty's use of the creosoted sawdust on the roadway and of the hazard it created, and in fact complained about it on several occasions to Liberty's agents and reported this condition to his superiors. The roadway in question was used not only by plaintiff and Liberty's employees but also at lease by Liberty's customers and by contractors retained by Liberty to repair its vehicles and equipment. The jury, finally, could have found that the accident occurred when plaintiff returned in his truck from a patrol in order to use the telephone in the ranger station. He parked the truck within a reasonable distance of the building, and despite his caution and care in traversing the slippery roadway, nevertheless fell, seriously injuring his left knee.
In granting defendant's motion for an involuntary dismissal based on this factual complex, the trial judge, relying on Snyder v. I. Jay Realty Co., 30 N.J. 303 (1959), initially held that the extent of the duty owed by an occupier of land to a person coming thereon is determined by the status of the person  that is, whether he is classifiable as an invitee, a licensee, or a trespasser. Analogizing plaintiff's status to that of a police officers or fireman, he concluded *357 that plaintiff was a licensee and, therefore, barred from recovery by his admitted knowledge of the dangerous condition and the risk involved. We are satisfied that he erred, and that his error lay in categorizing plaintiff as a licensee rather than as an invitee.
Plaintiff, in seeking a reversal, first urges us to abolish the historical distinctions between the invitee, licensee and the trespasser and to substitute therefor a single rule of reasonable care and foreseeability of harm in the particular circumstances of each case. Plaintiff's argument is not without cogency, and we note that an increasing number of jurisdictions are taking just that approach to the resolution of negligence actions based on the defective condition of land. At least three have expressly done so because of the difficulties and artificialities which they have perceived to be involved in classifying the status of a public official injured on private property while performing surveillance, inspection or similar duties. See Mounsey v. Ellard, 363 Mass. 693, 297 N.E.2d 43 (Sup. Jud. Ct. 1973), and Mile High Fence Co. v. Radovich, 175 Colo. 537, 489 P. 2d 308 (Sup. Ct. 1971), so holding in respect of policemen, and Smith v. Arbaugh's Restaurant, Inc., 152 App. D.C. 86, 469 F.2d 97 (1972), cert. den., 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973), so holding in respect of a health inspector. And see, abolishing the distinction at least between licensees and invitees in other status contexts as well, Antoniewicz v. Reszcynski, 70 Wis.2d 836, 236 N.W.2d 1 (Sup. Ct. 1975); Rowland v. Christian, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561 (Sup. Ct. 1968); Pickard v. City and County of Honolulu, 51 Haw. 134, 452 P.2d 445 (Sup. Ct. 1969); Mariorenzi v. Joseph DiPonte, Inc., 333 A. 2d 127 (R.I. Sup. Ct. 1975); Peterson v. Balach, 294 Minn. 161, 199 N.W.2d 639 (Sup. Ct. 1972). And see, abolishing the common-law rules of status in respect of maritime law, Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). See also, Occupiers' Liability Act, 5 & 6 Eliz. 2, c. 31 (1957), abolishing *358 in England the historical distinction between licensees and invitees. Representative of the rationale of these holdings is this persuasive reasoning of Chief Justice Bazelon in Smith v. Arbaugh's Restaurant, Inc., supra:
* * * (W)e are once again struck by the awkwardness of fitting the circumstances of modern life into the rigid common law classifications of trespassers, licensees, and invitees. More importantly, we do not believe the rules of liability imposed by courts in the eighteenth century are today the proper tools with which to allocate the costs and risk of loss for human injury * * *.
Rather than continue to predicate liability on the status of the entrant, we have decided to join the modern trend and to apply ordinary principles of negligence to govern a landowner's conduct: A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk. [469 F.2d at 99-100]
We decline, however, to accept plaintiff's invitation to enunciate a new rule of law for this jurisdiction for two reasons. First, we are clearly precluded from so doing in view of the Supreme Court's thus far expressed determination to adhere to the common-law status distinctions. Snyder v. I. Jay Realty Co., supra, 30 N.J. at 311. Furthermore, we are persuaded, in any event, that plaintiff here was clearly entitled to the highest degree of care required of an occupier of land, namely the degree of care owed to an invitee.
We note at the outset that the explanation offered in Snyder, supra, for retaining the status distinctions was the court's observation that "These common law classifications are sufficiently flexible to fulfill the purposes of our legal system in serving the needs of present day society." If they are to continue to do so, however, they must be applied consonantly with functional realities and practicalities. The result here was clearly unwarranted in those terms. The traditional basis upon which public officials have been denied invitee status has been essentially two-fold. The first and eminently unsatisfactory rationale is the simplistic technicality that the official, in performing his duties on the *359 premises, be they what they may, is not there at the occupier's invitation or to advance any business purpose of his. He is merely privileged to enter by operation of law. The second rationale, which is conceptually acceptable, is that the official's function implies the undertaking of the very risk which accounts for his presence on the premises in the first instance. That is the rationale which, for example, underlies the landowner's immunity from liability to a fireman in respect of the risks of injury inevitably involved in firefighting. See Krauth v. Geller and Buckingham Homes, Inc., 31 N.J. 270 (1960).
While that rationale may be theoretically sound, it is not always factually applicable. The place and cause of the injury may not, in fact, be attributable to the special risk and precise purpose implicit in the official's presence. The official might, rather, be injured because of a defective condition which should reasonably have been anticipated by the landowner to have been likely to result in injury as well to an invitee making the same use of the premises as the official. We perceive a critical distinction, for example, in the situation where a police officer enters a department store to make an inquiry about a former employee and is injured when the entrance steps collapse and the situation where a police officer, responding to a burglar alarm signal from a public school, climbs into the attic through a trapdoor in a janitor's closet, makes his way along a narrow catwalk, and is injured when he slips off the catwalk and falls through a false ceiling below it. Compare, Meiers v. Fred Koch Brewery, 229 N.Y. 10, 127 N.E. 491 (Ct. App. 1920), finding liability in the first situation, with Nared v. School Dist. of Omaha, etc., 191 Neb. 376, 215 N.W.2d 115 (Sup. Ct. 1974), denying recovery in the second. The point is, of course, that there is no sound justification in theory or in public policy for denying a public official the same legal protection afforded to an invitee when the public official is making the same use of the same portion of the premises as would an invitee, and *360 where a defect in the premises would subject the owner to liability to the invitee.
It is, therefore, the factual context surrounding the public official's injury rather than the mere fact of his official status which must be determinative of the scope of the landowner's liability. The significance of the operative factual pattern underlies the rule incorporated in the second edition of the Restatement of Torts, adopted in 1965. Section 345 (2) provides that:
The liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land held open to the public, is the same as the liability to an invitee.
The rationale is explained as follows:
Where premises are held open for the use of the public, and a fireman or policeman enters upon a part of the premises which is so held open, and at a time when it is open, he may reasonably assume that reasonable care has been used to prepare the land for the reception of the public, and to make it safe for them. Under such circumstances the reasons ordinarily existing for the application of the rule stated in Subsection (1) are lacking, and the invitation to the public to enter may be taken to give the necessary assurance to those who enter under a privilege in the performance of their duties. The visitor is therefore entitled to the status of an invitee under such circumstances and the possessor's liability to him falls under the rule stated in § 343. [Restatement, supra, Comment (e) at 229.]
The Restatement rule has been recently cited with approval by this court in Walsh v. Madison Park Properties, Ltd., 102 N.J. Super. 134, 139 (App. Div. 1968), distinguishing in respect of a fire inspector between the risks peculiarly inherent in his function and those to which invitees are especially susceptible. The rationale of the rule was, moreover, anticipated by our former Supreme Court in McCormack v. Windsor, 9 N.J. Misc. 543 (Sup. Ct. 1931), a case involving a municipal building inspector. See further cases collected Restatement, Torts 2d, Appendix, § 345 at 241-242, in respect of, e.g., sanitary, safety and building inspectors, *361 garbage collectors, water meter readers, postmen, and tax and customs collectors. We concur with the Restatement rationale, and accordingly hold that when a public official enters upon premises in the performance of his duties, he has, irrespective of the specific nature of his mission, the status of an invitee in respect of personal injury which he sustains while making the same use of the premises which any other invitee should have been reasonably anticipated to have made.
Applying these principles to the facts here, we are satisfied that plaintiff was entitled in the circumstances to the duty owed an invitee. The roadway on which he slipped was, if not open to the public at large, at least used by defendant's business invitees, or so the jury could have found. He was not injured while performing duties requiring him to assume any special risks inherent in his employment. Any business invitee of defendant was liable to have sustained the same accident and the same injuries in making the same use of the allegedly defective premises as plaintiff did. He was owed no lesser duty in respect of the condition of the roadway than any of the defendant's business invitees. A new trial is therefore required for the determination by a jury as to whether or not defendant breached its duty as we have defined it and whether or not plaintiff was contributorily negligent.
Reversed and remanded for a new trial.