## WOODS v CITY OF WARREN

Docket No. 89274. Argued December 4, 1991 (Calendar No. 4). Decided March 23, 1992. Dissenting opinion by Levin, J., filed March 27, 1992.

Charles G. Woods, a Center Line police officer, and Joanne Woods, his wife, brought an action in the Macomb Circuit Court against the City of Warren, seeking damages for injuries sustained by Sgt. Woods following a high speed chase. The court, Robert J. Chrzanowski, J., granted summary disposition for the defendant on the basis of the fireman's rule, which provides that police officers and fire fighters may not recover for injuries sustained in the line of duty. The Court of Appeals, Doctoroff, P.J., and McDonald and Jansen, JJ., reversed in an opinion per curiam (Docket No. 108526). The defendant appeals.

In an opinion by Justice Brickley, joined by Chief Justice Cavanagh, and Justices Boyle, Riley, Griffin, and Mallett, the Supreme Court *held:*

The plaintiff suffered an injury from a specific risk directly connected with the performance of his duties as a police officer, justifying application of the fireman's rule.

1. The purpose of safety professions is to confront danger. The public should not be held liable for damages for injuries occurring in the performance of the very function police officers and fire fighters are intended to fulfill. When this rationale is implicated and no other considerations outweigh it, the fireman's rule requires dismissal of a safety officer's suit. In this case, the plaintiff's crash occurred while he was performing the classic police function of maintaining sight of a stolen vehicle. The fireman's rule applies, and his suit must be dismissed.

2. It is the kind of duty, not the kind of injury, that provides the starting point for analysis. The analytical focus must be on whether the injury stems directly from an officer's duties. If it does, the fireman's rule applies. While the rationale might not

REFERENCES
Am Jur 2d, Negligence §§ 1210, 1504.
See the Index to Annotations under Fire Departments and Firefighters; Police and Law Enforcement Officers.

apply in every circumstance involving injury of a safety officer, the rule is flexible and should be applied when justified. The scope of the rule includes negligence in causing the incident requiring a safety officer's presence and those risks inherent in fulfilling the police or fire fighting duties.

3. While the City of Warren has an affirmative statutory obligation to maintain its roads, and any person may bring a suit to enforce that obligation, MCL 691.1402; MSA 3.996(102), the statute does not remove the bar imposed by the fireman's rule. Although the danger from slippery roads is not unique to police officers, the plaintiff's injury flows directly from his performance of his duties as a police officer and from a specific risk that was increased by his performance of those duties.

Reversed.

Justice LEVIN, dissenting, stated that the majority has resolved factual issues with legal conclusions on the basis of an incomplete record. The case should be reversed and remanded for trial, and the factual issues submitted to the trier of fact for resolution.

The statutory obligation to maintain a road in reasonable repair was imposed for the benefit of all who use the road, fire fighters and police officers included. Unless the performance of duty, and not a defect of the road, causes a fire fighter's or police officer's injury, the officer may maintain an action for failure to keep a road in reasonable repair. The focus of the inquiry is causation. If an accident occurred because a road was defective, whether or not the officer was driving, as a result of a police chase, in a manner different than would a civilian user of the road at the same time and under the same road conditions, the fireman's rule does not apply, and the city would be subject to liability. In this case, on the basis of the summary disposition record, it was a question of fact, and not of law, whether the plaintiff was driving in a manner different than an ordinary citizen because he was acting as a police officer and, if so, whether the accident resulted from this different behavior, and not from a defect of the road.

The rationale for the fireman's rule may not justify barring recovery for negligence in every case in which an officer is injured in the line of duty. The majority's statement that the fireman's rule prevents police officers and fire fighters from recovering for injuries sustained in the course of duty should not be read to bar recovery simply because the officer was injured in the line of duty. An officer may not recover where a substantial cause of the injury is confronting a risk inherent in fulfilling police or fire fighting duties or the performance of the

very functions police officers and fire fighters are intended to fulfill. It is necessary to distinguish between the risks assumed by an officer and those that are not.

The dangers that a police officer confronts by the nature of the profession do not include the risk of injury from defects of land open to the public. The owner of such land owes no less a duty to a police officer who is present than to a member of the general public on the same premises. The city's duty, owed to all users of a road, to keep it in reasonable repair, is not suspended if a defect of the road causes injury of a police officer. The question is ultimately one of legislative intent. There is no reason to suppose that the Legislature intended that the city would not be liable, in situations where it would otherwise be liable, if the person who suffers injuries caused by a defect of the road, and not by driving behavior during a police chase, happens to be a police officer.

183 Mich App 656; 455 NW2d 382 (1990) reversed.

NEGLIGENCE — POLICE OFFICERS — FIREMAN'S RULE.

An injury suffered by a police officer as a result of undertaking a specific risk directly connected with the performance of duties as an officer is sufficient to justify applying the fireman's rule to prevent recovery.

*Salvatore D. Palombo & Associates* (by *Salvatore D. Palombo*) for the plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Millard Becker, Jr.* and *David M. Shafer*), for the defendant.

BRICKLEY, J. In this case, we are asked whether the fireman's rule adopted in *Kreski v Modern Wholesale Electric Supply Co,* 429 Mich 347; 415 NW2d 178 (1987), applies to bar a suit brought by a police officer injured following a high speed chase. Because we believe that it does, we reverse the decision of the Court of Appeals and affirm the circuit court's order of summary disposition.

I

During the early morning hours of February 2,

1986, Sergeant Charles Woods of the Center Line Department of Public Safety was on police patrol in Center Line. Reserve Officer Phillip Smart accompanied him. Around 2:50 A.M., Sergeant Woods received word that a Camaro z-28 had been stolen and was proceeding down a nearby street. Abandoning normal patrol duties, he drove to investigate. He spotted the stolen car as it drove past the street on which Sergeant Woods was then driving. Sergeant Woods notified the dispatcher that he had located the car and gave chase.

Upon seeing Sergeant Woods, the driver of the stolen car accelerated rapidly. Sergeant Woods also sped up, trying to maintain observation of the vehicle. As the two cars sped down Lawrence Street, Reserve Officer Smart began alerting other police officers of the incident so that they could saturate the area. As they drove, Sergeant Woods interrupted Officer Smart and took over radio communications himself.

Lawrence Street runs through both the City of Center Line and the City of Warren. Although starting in Center Line, the two cars quickly entered Warren. Lawrence Street, a north-south street, ends where Republic Street, an east-west street, cuts across it, forming a "T" intersection. The stolen car approached Republic Street, attempted to turn, but could not because of glaze ice on the road, drove over the curb and came to rest in the living room of an unoccupied house on Republic Street. The thief then fled on foot. Sergeant Woods meanwhile also attempted to slow down as he approached the intersection, but, because of the icy road, could not, and smashed into the same house, suffering injuries to his pelvis and hip.

On September 26, 1986, Sergeant Woods and his

wife brought this action in the Macomb Circuit Court. Following discovery, the circuit court granted defendant's motion for summary disposition on the basis of the fireman's rule. Plaintiff appealed, and the Court of Appeals reversed the circuit court's order. 183 Mich App 656; 455 NW2d 382 (1990). Defendant then filed an application for leave to appeal, which we granted. 437 Mich 1035 (1991).

II

Taking plaintiff's[1] well-pleaded allegations as true,[2] the particular facts alleged call for application of the fireman's rule as adopted in *Kreski v Modern Electric.* Because Sergeant Woods' injury resulted directly from his performance of police duties, the Macomb Circuit Court's order granting summary disposition was correct.

The fireman's rule has a long and impressive common-law heritage.[3] Michigan first embraced it in *Kreski.* The fireman's rule prevents police officers and fire fighters from recovering for injuries sustained in the course of duty. *Id.* at 358. Even though several rationales have been advanced, the most basic is "that the purpose of safety professions is to confront danger and, therefore, the public should not be liable for damages for injuries occurring in the performance of the very function

[1] Although both Sergeant Woods and his wife filed complaints, Mrs. Woods' suit is wholly derivative. We will therefore use "plaintiff" in the singular.

[2] Although defendant did not originally make it clear, the circuit court analyzed his motion for summary disposition as one brought under both MCR 2.116(C)(8) and MCR 2.116(C)(10). We analyze the question under MCR 2.116(C)(8). *Kreski, supra* at 352, 356. Because summary disposition is proper under subrule (C)(8), we do not reach the subrule (C)(10) issue.

[3] The *Kreski* Court described the precedential backing of the fireman's rule as "impressive" and noted that the rule was "deeply rooted in common law." *Id.* at 357.

police officers and fire fighters are intended to fulfill." *Id.* at 368. When this rationale is implicated and no other considerations outweigh it, the fireman's rule requires dismissal of a safety officer's suit. Adjudicating these disputes requires "balanc[ing] the underlying rationales with the interest of allowing recovery when those rationales are not implicated." *Id.* at 371. Thus, the rule will develop mainly through case-by-case adjudication of concrete disputes. We follow that approach today.

We believe plaintiff's suit presents a clear case for the application of the fireman's rule. In both *Kreski* and *Reetz v Tipit, Inc,* a case consolidated and decided with *Kreski,* this Court applied the fireman's rule to bar suits brought by a fire fighter and a police officer who suffered injuries directly related to performance of their duties. This Court dismissed both suits because the injuries clearly occurred while the safety officers were performing their duties. In *Kreski,* a fire fighter was killed when a part of a burning building's roof fell on him. In *Reetz,* a police officer suffered injuries when she fell down a trap door while investigating a burglary.[4] Each injury occurred in the performance of a duty characteristic of the particular safety officer's job.

---

[4] In the *Reetz* portion of its opinion, this Court noted:

> [P]olice officers cannot be certain what dangers surround them when investigating a burglary. They have been trained to expect a variety of contingencies and to deal with those contingencies as they arise. It was plaintiff's duty to investigate the burglary, despite the inherent dangers. In performance of her duty, plaintiff took the premises as she found them, with no representations being made regarding their safety. [*Kreski, supra* at 378.]

The Court's comment applies equally to Sergeant Woods. He had received extensive training in maneuvering cars on slippery roads, and it was Sergeant Woods' duty to follow the stolen car. If the fireman's rule applied to Officer Reetz, it applies to Sergeant Woods.

Sergeant Woods' crash occurred while he was performing a classic police function. After receiving a radio report of a stolen car, he located it, informed the dispatcher, and pursued it. Sergeant Woods was no longer merely on patrol; he was actively engaged in one of a police officer's most common duties. Needing to maintain sight of the stolen vehicle, Sergeant Woods accelerated to speeds between forty and forty-five miles per hour. Driving at high speeds on potentially icy roads obviously increases the risk of an accident such as Sergeant Woods'. This injury clearly stems from the performance of a fundamental police function. In such circumstances, the fireman's rule "foundational policy rationale" applies, and plaintiff's suit must share the same fate as those in *Kreski* and *Reetz,* i.e., dismissal.

### III

Plaintiff seeks to avoid application of the fireman's rule with four arguments. First, he argues that an affirmative statutory obligation exists to maintain roads in a safe condition. MCL 691.1402; MSA 3.996(102). That duty, he suggests, allows "any person" to bring suit against a governmental entity for injuries caused by breach of that obligation. Second, he contends that the fireman's rule ought not to apply because the injury suffered by Sergeant Woods is not "unique" to police duties. Third, he argues that a number of "exceptions" to the fireman's rule apply, allowing Sergeant Woods' suit to proceed to trial. Finally, plaintiff suggests that grammatically parsing *Kreski's* holding creates a basis to bring his suit to trial. We disagree with each of these contentions.

We agree that the City of Warren has an affirmative statutory obligation to maintain its roads and that "any person" may bring a suit to enforce

that obligation. We do not, however, agree that this section removes the bar to plaintiff's action imposed by the fireman's rule. In *Forest v Parmalee,* 402 Mich 348; 262 NW2d 653 (1978), this Court indicated that the sole purpose of MCL 691.1402; MSA 3.996(102) was to provide an exception to governmental immunity. The statute neither adds to nor detracts from a plaintiff's right to proceed in the absence of governmental immunity.[5] *Forest, supra* at 358.

We also reject plaintiff's second argument. Although the danger from slippery roads is not unique to police officers, Sergeant Woods' injury flows directly from his performance of his police duties and from a specific risk which, under the circumstances, was increased by his performance of those duties.[6] As *Kreski's* articulation of the fireman's rule rationale indicates, the analytical focus must be on whether the injury stems directly from an officer's police functions. If the circumstances indicate that it does, the fireman's rule applies. If the circumstances indicate otherwise, it likely does not.

We reject plaintiff's suggested "uniqueness" test for another reason as well. To adopt this approach would effectively diminish the fireman's rule. Although some injuries may be incurred more commonly by police officers, no injuries are unique to them. What is unique is being called upon to perform duties which expose officers to such risks

---

[5] As this Court in *Reich v State Highway Dep't,* 386 Mich 617, 623; 194 NW2d 700 (1972), explained:

> The object of the legislation under consideration is to waive the immunity of governmental units and agencies from liability for injuries caused by their negligent conduct, thus putting them on an equal footing with private tortfeasors.

[6] *McGhee v Dep't of State Police,* 184 Mich App 484; 459 NW2d 67 (1990).

far more often than the public at large.[7] The kind
of duty, not the kind of injury, provides the start-
ing point for analysis.

Plaintiff's next argument asserts that *Kreski*
apparently recognizes several "exceptions" to the
fireman's rule. It did not. The *Kreski* Court did
indicate that the rationale of the fireman's rule
might not apply in every circumstance involving
an injury to a safety officer. It suggested, for
instance, that buildings open to the public might
justify a different result and that injuries resulting
from intentional torts might also justify disregard-
ing the fireman's rule. The Court did not, however,
establish that those circumstances prevented appli-
cation of the fireman's rule.[8] It merely used them
to indicate its willingness to apply the rule flexibly
as circumstances required. That the *Kreski* Court
chose this language to avoid rigid and formalistic
adjudication does not mean it intended to defeat
application of the fireman's rule when otherwise
justified.

Plaintiff's final attempt to avoid the fireman's
rule is to parse the *Kreski* holding narrowly. He
points to the following language as expressive of
the scope of the fireman's rule:

> [A]s a matter of public policy, we hold that fire
> fighters or police officers may not recover for inju-
> ries occasioned by the negligence which caused
> their presence on the premises in their profes-
> sional capacities. This includes injuries arising
> from the normal, inherent, and foreseeable risks of
> the chosen profession. [*Kreski, supra* at 372.]

[7] Sergeant Woods himself echoed this: "In the course of eighteen
years, I've had numerous injuries occur, that sort of goes with my
type of work."

[8] Of course, this statement should not be taken to prevent applica-
tion of these "exceptions" when *Kreski*'s fundamental policy rationale
is inapplicable.

During oral argument, plaintiff provided a grammatical analysis of this statement, noting that between the two sentences no conjunction is used. From a grammatical standpoint the word "includes" refers to a subset, making the entire second sentence applicable only if the predicate condition precedent of the first sentence is met. As a result, he suggests that *Kreski's* holding should not bar his cause of action.

Plaintiff, however, overlooks an exposition of the rule that immediately follows. As this Court held: "The scope of the rule . . . includes negligence in causing the incident requiring a safety officer's presence *and* those risks inherent in fulfilling the police or fire fighting duties."[9] *Kreski, supra* at 372 (emphasis added). Given the factual context in *Kreski* and *Reetz*, we think the latter statement more accurately reflects the law and therefore explicitly adopt it today.

In *Kreski*, the plaintiff died when a burning roof fell on him. The plaintiff alleged that negligence in the design of the roof led to its collapse. The reason for plaintiff's presence, however, was the fire. According to Sergeant Woods' theory, the plaintiff should have recovered. This Court, however, denied recovery because his injury was a "normal, inherent, and foreseeable risk[ ]" of fire fighting duties. *Id.* at 372. Therefore, the Court necessarily applied the latter exposition of the rule.

The application of the fireman's rule in *Reetz* reinforces the conclusion that the second description of the fireman's rule most accurately states

[9] The *Kreski* Court offered this explanation in response to an argument that the negligence was unrelated to the reason the fire fighter was present. "Plaintiff also argues that, since the alleged negligence is unrelated to the cause of the fire, it was unforeseeable and, thus, not inherent in fire fighting. We disagree." *Kreski, supra* at 372.

the law. In *Reetz,* a police officer fell through an open trap door while investigating a burglary. The reason for her presence in the building was not connected with the negligence alleged, i.e., leaving the trap door open. Again, the Court found that the fireman's rule prevented recovery in two general circumstances, not one. The disposition of these cases indicates that the fireman's rule bars recovery for two types of injury: those deriving from the negligence causing the safety officer's presence and those stemming from the normal risks of the safety officer's profession.

None of plaintiff's arguments suffice to prevent application of the fireman's rule in this case. Sergeant Woods suffered an injury from a specific risk directly connected with the performance of his police duties. In the circumstances presented here, it is sufficient to justify applying the fireman's rule in Sergeant Woods' suit.

IV

Because we believe the fireman's rule applies in these circumstances, we reverse the decision of the Court of Appeals and affirm the circuit court's order of summary disposition dismissing plaintiff's suit.

CAVANAGH, C.J., and BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BRICKLEY, J.

The following opinion was filed with the Clerk of the Supreme Court on March 27, 1992, after the release of the opinion of the Court on March 23, 1992—REPORTER.

LEVIN, J. (*dissenting*). The question presented is whether the fireman's rule, stated in *Kreski v Modern Wholesale Electric Supply Co,* 429 Mich 347; 415 NW2d 178 (1987), bars an action by a

police officer, injured following a vehicular chase, against a municipality for breach of the statutory obligation to maintain a road "in reasonable repair so that it is reasonably safe and convenient for public travel."[1]

The majority rules that Charles G. Woods, a Center Line police officer, "suffered an injury from a specific risk directly connected with the performance of his duties as a police officer, justifying application of the fireman's rule,"[2] reverses the Court of Appeals[3] and affirms the summary disposition granted by the circuit court to the City of Warren.

I would affirm the Court of Appeals.

I

Woods and his wife commenced this action against the City of Warren claiming that Woods' injuries were caused by the failure of the city to maintain, as required by the highway exception to the governmental tort liability act, a road in reasonable repair.[4]

A

Woods was employed as a police officer for the City of Center Line. While on patrol, he received a radio dispatch that a stolen automobile was in the vicinity. He observed the automobile traveling at a high rate of speed. He pursued the vehicle, and alerted other police vehicles.

Although it had been snowing, the street had been salted and cleared. During the chase, the

---

[1] MCL 691.1402; MSA 3.996(102).

[2] *Ante,* p 186, reporter's syllabus.

[3] 183 Mich App 656; 455 NW2d 382 (1990).

[4] See n 1.

stolen vehicle reached a speed of one hundred miles per hour, and, at one point, became airborne. Woods testified on deposition that his speed did not exceed fifty-five miles per hour at any time during the chase. Further, Woods testified that he reduced his speed to twenty-five miles per hour before he approached the intersection where the accident occurred. Woods' vehicle hit the bottom of the grade where the roadway slopes dramatically, and slid into the front cement porch of a house, resulting in his injuries.

Woods alleged that ice had accumulated in chuckholes at the intersection, and that his vehicle began to slide and the brakes did not hold. He further alleged that the "frozen condition was caused by the several and many ruts and chuck holes in the street and said lack of repair in the roadway which virtually eliminated the crown of the roadway which caused the roadway to hold water and create[d] a dangerous frozen condition on its surface during cold weather,"[5] and that "in previous years, Defendant had taken steps to correct the same and in fact knew, or should have known, that this was an annual occurrence in that area and it nevertheless took no steps to properly remedy said condition."[6]

B

In granting summary disposition, the circuit judge referred to the statement in *Kreski, supra,* p 376, that the fireman's rule is not limited to absolving "landowners and occupiers from an undue burden of keeping their premises safe for fire fighters and police officers." In *Kreski,* this Court said that the "major underpinning of the rule is

---

[5] Plaintiff's complaint, p 7.

[6] *Id.*

that the job of safety officers is to confront risks generally caused by negligence, and thus, as a matter of policy, the safety officers may not recover damages for injuries arising out of negligence in causing the reason for their presence." The circuit judge concluded that the "policy rationales espoused in *Kreski* support application of the fireman's rule where, as here, the injuries complained of arise from the normal, inherent, and foreseeable risk of the profession."

The Court of Appeals reversed, stating that "it is clear that the hazardous condition of the road was wholly unrelated to the occurrence which required the officer's presence on the road. Further, the road was open to the public and, while the risks thus encountered may have been foreseeable, they were not unique to plaintiff's profession. We conclude that the fact pattern in this case is an exception to the fireman's rule."[7]

C

In reversing the decision of the Court of Appeals, the majority states that the circuit court correctly granted summary disposition because "Woods' injury resulted directly from his performance of police duties."[8] The majority also states that "[t]he fireman's rule prevents police officers and fire fighters from recovering for injuries sustained in the course of duty."[9]

Turning to the facts in the instant case, the majority states that Woods' "crash occurred while he was performing a classic police function"; "[n]eeding to maintain sight of the stolen vehicle" he "accelerated to speeds between forty and forty-

[7] *Woods*, n 3 *supra*, p 659.
[8] *Ante*, p 190.
[9] *Id.*

five miles per hour"; "[d]riving at high speeds on potentially icy roads obviously increases the risk of an accident"; "[t]his injury clearly stems from the performance of a fundamental police function"; "[i]n such circumstances, the fireman's rule 'foundational policy rationale' applies."[10]

The majority has resolved factual issues with legal conclusions. On the record, incomplete as it is, the issue of Woods' speed at the time of the accident is disputed. While the city alleges, and the majority assumes, that Woods was traveling at a high speed when he entered the intersection where the accident occurred, Woods maintains that he had slowed to a speed of twenty-five miles per hour before he approached the intersection. Further, the majority has concluded that the accident was the direct result of "high speed" driving, and not of a road defect. On the record, however, this too is disputed. I would affirm the decision of the Court of Appeals, which would remand for trial, and direct that factual issues be submitted for resolution by the trier of fact.

II

The statutory obligation to maintain a road in reasonable repair was imposed for the benefit of all who use the road, fire fighters and police officers included. Unless the performance of their duties, and not a defect of the road, causes a fire fighter's or police officer's injury, these officers may maintain an action for failure to keep a road in reasonable repair.

The focus of the inquiry, then, is causation. If the accident occurred because the road was defective, whether or not Woods was driving differently, as the result of police chase, than would a civilian

---

[10] *Id.,* p 192.

user of the road at the same time under the same road condition, the fireman's rule does not apply, and the city is subject to liability.[11]

On this summary disposition record, it was a question of fact, and not of law, whether Woods was driving in a manner different than an ordinary citizen because Woods was acting as a police officer and, if so, whether the accident resulted from this different behavior, and not from a defect of the road. As a police officer, Woods had a duty to pursue the stolen automobile. If in pursuit he was driving at high speed on the icy road, and it was this behavior, and not a defect in the road, that caused the accident, Woods should not recover damages from the city. But, if Woods had, indeed, slowed to twenty-five miles per hour, and the trier of fact finds that pursuit of the stolen automobile was not a substantial cause of the accident, he should be able to recover.

The instant case is analogous to *Cella v Interstate Properties*, 232 NJ Super 232; 556 A2d 1262 (1989), where a police officer, investigating a suspicious car, slipped on ice that had formed in a depressed area of a shopping center parking lot. The trial court summarily dismissed plaintiff's claim against the owners of the shopping center for negligence in failing to keep the lot in reasonable repair. The appellate court reversed on the ground that there were *factual* issues for the jury to decide:[12]

---

[11] The issue of causation can be approached in a number of ways, e.g., even if the city was at fault in failing to maintain the road in reasonable repair, the city would be relieved of liability if Woods' driving behavior, as the result of a high speed police chase, was a substantial cause of the accident.

[12] The court further stated:

We are somewhat hampered in our decision of this matter by the lack of a detailed record. [*Id.,* p 234.]

"[A] jury should decide whether it was reasonable for defendant to have expected ·that anyone would walk over that area of the lot at 4:30 A.M. and, if so, whether defendant should have either corrected or reasonably warned of the condition."[13]

In the instant case, the majority, like the trial court in *Cella,* has drawn the *factual* conclusion that Woods' injuries were substantially caused by the extreme speed of the chase. However, as in *Cella,* this Court is "hampered . . . by the lack of a detailed record."[14]

### III

The origin of the fireman's rule was traced by this Court in *Kreski* to an 1892 decision of the Illinois Supreme Court.[15] The Illinois court ruled that a fireman cannot recover for a failure of a person in possession of premises to keep the premises in safe repair because a fireman was a mere licensee and not an invitee.

The factual situations in the two cases consolidated on appeal and dealt with in the *Kreski* opinion illustrate the classic applications of the fireman's rule: A fire fighter may not recover against the owner on the theory that the owner's negligence was responsible for the fire that brought the fire fighter to the premises or in-

A jury must answer this question [whether the officer was in a public area at the time of his fall]. [*Id.,* p 240.]

[A] jury may also consider if some other warning should have been placed or given. [*Id.,* p 242.]

13 *Id.*

14 *Id.,* p 234.

15 *Kreski, supra,* p 358, citing *Gibson v̇ Leonard,* 143 Ill 182; 32 NE 182 (1892).

creased the hazard once he had arrived, nor may a fire fighter recover against the owner on the theory that the owner failed to keep the premises in safe repair. In later cases, the fireman's rule was extended to bar actions by police officers.

In *Kreski,* the personal representative of a fire fighter sought to recover against the owner and occupier of a building and the Detroit Edison Company, claiming that their negligence in maintaining the building contributed to the collapse of the building after the fire had started and caused his death.

Another aspect of the fireman's rule is illustrated by *Reetz v Tipit, Inc,* decided with *Kreski,* where a police officer responded to a burglary and entered the premises through a broken window. The officer was seriously injured when she fell through an open trap door, located immediately behind swinging doors. The interior was dark and the officer was using a flashlight. The officer sought to recover against the owner of the premises on the theory that, by leaving the trap door open, he had failed to maintain the premises in safe repair.

### A

This Court recognized in *Kreski* that the rationale for the fireman's rule may not justify barring recovery for negligence in every case that an officer is injured in the line of duty.[16] The majority's statement that "[t]he fireman's rule prevents

---

[16] As a result of examining the policy rationales supporting the fireman's rule, we are persuaded that considerations of fairness and public policy compel us to adopt the rule for Michigan. However, we must clarify that we are not attempting to delineate the precise parameters of the rule in this opinion. Several exceptions involving factual situations not presented here have developed in the states employing a fireman's rule.

For example, the alleged acts and omissions in the instant

police officers and fire fighters from recovering for injuries sustained in the course of duty"[17] should not be read as barring recovery simply because the officer was injured in the line of duty.

An officer, I agree with the majority, may not recover where a substantial cause of his injury is confronting a risk " 'inherent in fulfilling the police or fire fighting duties,' "[18] or " 'the performance of the very function police officers and fire fighters are intended to fulfill.' "[19]

It thus becomes necessary to distinguish between those risks that an officer "assumes"[20] and those that he does not. An officer does not, for example, assume the risk so as to bar an action, any more so than any other citizen, of being struck by a person who runs a red light. Nor would it promote the public policy identified in *Kreski* as the underlying rationale of the rule to hold that a tavern is not subject to dramshop liability to a police officer who is injured, while taking a crime report from a citizen, by a drunken driver who went over the curb onto the sidewalk.

---

cases all occurred prior to plaintiffs' arrivals. There are no allegations of wrongdoing or negligence after plaintiffs were on the scene. Further, neither plaintiff has alleged negligence rising to the level of wilful, wanton, or intentional misconduct. In both cases, the incidents took place when the premises were closed. Therefore, we are not presented with a situation in which the injuries occurred when the buildings were open to the public for business. [*Id.*, pp 370-371.]

All of these scenarios have been faced by courts in fine tuning their fireman's rules to best balance the underlying rationales with the interest of allowing recovery when those rationales are not implicated. By adopting a fireman's rule on the basis of public policy, we also will be able to flexibly address the different fact patterns as they are presented. [*Id.*, p 371. Citation omitted.]

[17] *Ante*, p 190.

[18] *Id.*, p 195, quoting *Kreski, supra*, p 372.

[19] *Id.*, pp 190-191, quoting *Kreski, supra*, p 368.

[20] *Kreski, supra*, pp 360-365.

Surely allowing the citizen, struck by the drunken driver at the same time, to maintain an action and denying the officer the right to do so would not advance that policy. Although the officer is on duty, the risk he assumed when he became an officer does not include being struck on the sidewalk by an automobile driven by a drunken driver.

Surely, also, neither does an officer, more so than any other citizen, assume the risk that a tire of a police cruiser, or the cruiser itself, is unsafe because of product defect. The rationale of the fireman's rule would not support barring a products liability action against the manufacturer of the tire or automobile.

B

In the instant case, in contrast to *Kreski* and *Reetz*, the injury occurred on land that was open to the public. The applicability of the fireman's rule to such injuries was expressly left open in *Kreski*.[21]

When the fireman's rule first developed, firemen were injured on premises that were *not* open to the public. In later cases, a number of courts[22] adopted the view, now expressed in the Second

---

[21] [W]e are not presented with a situation in which the injuries occurred when the buildings were open to the public for business. [*Kreski, supra*, p 371.]

[22] See, e.g., *Hedberg v Mendino*, 218 Ill App 3d 1087; 161 Ill Dec 850; 579 NE2d 398 (1991) (policeman treated as invitee where he was injured on a defective sidewalk leading to premises that he was investigating regarding possible prowler); *Cella, supra* (policeman treated as invitee where he slipped and fell in a shopping center parking lot while investigating a suspicious car); *Brady v Consolidated Rail Corp*, 35 Ohio St 3d 161; 519 NE2d 387 (1988) (policeman treated as invitee because land was held open for use of the public, where, in the course of duty, he entered a railroad right of way); *Caroff v Liberty Lumber Co*, 146 NJ Super 353; 369 A2d 983 (1977) (state park

Restatement of Torts,[23] that the liability of the owner or possessor of land to a fire fighter or police officer who suffers harm because of a condition of the premises open to the public is the same as the liability to an invitee, but that, otherwise, the liability is the same as the liability to a licensee.[24]

The Second Restatement of Torts illustrates the

ranger treated as invitee where he slipped and fell on a roadway that was used by company's business invitees).

Cf. *Dini v Naiditch,* 20 Ill 2d 406, 416-417; 170 NE2d 881 (1960) (fireman treated as invitee where owner of a hotel failed to exercise reasonable care in maintenance of his property, resulting in injury to fireman—"Inasmuch as firemen obviously confer on landowners economic and other benefits which are a recognized basis for imposing the common-law duty of reasonable care [citations, including Restatement of Torts, omitted], we would agree . . . that an action should lie against a landowner for failure to exercise reasonable care in the maintenance of his property resulting in the injury or death of a fireman rightfully on the premises, fighting the fire at a place where he might reasonably be expected to be. . . . [F]or the clarification of the law, insofar as any language contained [in *Gibson v Leonard,* n 15 *supra*] might be inconsistent with our interpretation of the common law in this case, it must be deemed to be overruled, along with any Appellate Court cases following the archaic lisensee concept."); *Meiers v Fred Koch Brewery,* 229 NY 10, 15; 127 NE 491 (1920) (where a fireman fell into a coal hole in defendant's driveway thereby receiving injuries, the court held that a license to enter premises involves permission by the owner and its acceptance by the licensee, so that a fireman who goes upon the premises in the line of his duty to extinguish a fire is not merely a bare licensee—"The plaintiff entered by a driveway prepared for the use of those who had business with the defendant. Such persons were at least invited to use it.").

[23] 2 Restatement Torts, 2d, § 345(2), p 227.

See *Morin v Bell Court Condominium Ass'n,* 25 Conn App 112, 123; 593 A2d 147 (1991) (Dupont, C.J., dissenting) ("If premises are held open for the use of the public, and a fireman or policeman enters on those premises at a time and place forseeable [sic] if he or she were a member of the public, the usual reasons for determining that the landowner could not have anticipated that presence due to the entrance at an unforseeable [sic] time or place vanish. See 2 Restatement [Second], Torts § 345, comment [e] on subsection [2]. The plaintiff here was on a common stairway at 6 P.M. Neither the place nor the time of his injury was unusual."); *Fancil v Q S E Foods, Inc,* 60 Ill 2d 552, 556-557; 328 NE2d 538 (1975) (recognizes invitee/licensee distinction but concludes that a policeman who was fatally shot by a criminal when he entered a poorly lit store in the middle of the night was a licensee, and not an invitee).

[24] *Id.,* § 345, pp 226-227.

need to draw the line less brightly than the opinion of the majority might be read as drawing it when it stated that a department store is subject to liability to an officer who enters the premises "to make an official inquiry concerning a former employee," and is injured by the collapse of entrance steps because, in such a case, the officer is entering, albeit "in the performance of his public duty," a "part of the land held open to the public" and he is deemed to be an invitee, not a mere licensee.[25]

The dangers that a police officer, by the nature of his profession, confronts do not include the risk of injury from defects on land open to the public. The owner of land that is open to the public owes no less of a duty to a police officer who is present than to a member of the general public on the same premises. The city's duty, owed to all users of the road, to keep the road in reasonable repair is not suspended if a defect of the road causes injury to a police officer.

---

[25] *Id.*, § 345, illustration 5, p 229.

Professor Prosser anticipated the formulation in the Restatement when he wrote, "It may be suggested that a policeman calling during business hours at a store or an office to make an inquiry should be classed as an 'invitee,' where if he comes at midnight, or enters by the fire escape, or in pursuit of a criminal, he is not." Prosser, *Business visitors and invitees,* 26 Minn L R 573, 611 (1942).

In Restatement illustration 1, a fire fighter enters the building in the nighttime to extinguish a fire. He is injured by a collapse of a defective step on a back stairway that is not open to the public. The premises owner is not liable to the fireman although, in the exercise of reasonable care, he could have discovered the defect and repaired the step before the fire occurred. This illustration is analogous to *Reetz.*

A fire fighter who is injured in the open area of a department store when engaged in fighting a fire or a police officer who is injured in a shoot out with a bandit encounters a risk entirely different from the risk encountered by a customer. The customer will leave when the fire starts or duck when the shooting begins. The fire fighter, on the other hand, is obliged to remain and confront the danger of the fire, and the police officer is obliged to confront the risk of the shoot out.

IV

The question is ultimately one of legislative intent. There is no reason to suppose that the Legislature intended that the city would not be liable, in situations where it would otherwise be liable, if a police officer suffers injuries caused by a defect of the road, and not by police chase driving behavior.[26]

---

[26] Some courts have moved away from the fireman's rule by putting a gloss on statutory obligations.

See *Dini,* n 22 *supra* (where ordinances are general in their terms, they include firemen within their protection).

See also *Krauth v Geller,* 31 NJ 270, 274; 157 A2d 129 (1960) ("Thus it has been held that a fireman may recover if the injurious hazard was created in violation of statute or ordinance").