ROZENBOOM v PROPER

Docket No. 108042. Submitted March 22, 1989, at Detroit. Decided
May 2, 1989. Leave to appeal applied for.

On the same day that defendant Laura Proper was petitioning
the probate court to have George Proper, her husband, commit-
ted to a mental institution, George Proper was killed by police
officers who had responded to a report of a man shooting a gun
at the apartment building where the Propers lived. Prior to
being killed, George Proper shot and wounded Center Line
Police Officer William A. Rozenboom. Rozenboom then brought
an action in the Macomb Circuit Court against Laura Proper,
alleging negligence based upon a theory that she voluntarily
assumed control over George, and against Kenneth Shampo,
personal representative of the estate of George Proper, de-
ceased, for damages resulting from the assault and battery by
George Proper. Following Rozenboom's death from unrelated
causes, Peggy Lynn Rozenboom, personal representative of the
estate of William A. Rozenboom, was substituted as the plain-
tiff. The trial court, Robert J. Chrzanowski, J., granted the
defendants' motion for summary disposition, finding that both
claims were barred by the fireman's rule. Plaintiff appealed.

The Court of Appeals *held:*

1. The trial court properly granted summary disposition to
Laura Proper, finding that the allegations against her fell
squarely within the fireman's rule and were consequently
barred as a matter of public policy. The alleged negligence of
Laura Proper is the negligence which allegedly caused the
police officers' presence at the apartment building in their
professional capacities. Where a police officer responds to a
"man with a gun" dispatch, possible injury from gunshots is a
normal, inherent, and foreseeable risk of carrying out normal
professional duties.

2. The trial court erred in holding that the fireman's rule
precluded plaintiff's suit against George's estate for the assault

REFERENCES
Am Jur 2d, Assault and Battery §§ 79, 87; Premises Liability § 103.
Liability of owner or occupant of premises to police officer coming
on premises in discharge of officer's duty. 30 ALR4th 81.

and battery. The public policy underlying the fireman's rule simply does not extend to intentional abuse directed specifically at a police officer. The police officer and his employer should have some private recourse for injuries so blatantly and criminally inflicted. While the police are paid to risk being assaulted, they are not paid to submit to a criminal assault. Public policy is against allowing criminals to benefit from their wrongdoing. The defendant should not receive benefit of the fireman's rule to shield him from civil liability where his intentional acts are likely criminal acts upon the officer.

Affirmed in part and reversed in part.

1. NEGLIGENCE — FIRE FIGHTERS — POLICE OFFICERS — DAMAGES.

The "fireman's rule" provides that, as a matter of public policy, fire fighters or police officers may not recover for injuries occasioned by the negligence which caused their presence on the premises in their professional capacities; this includes injuries arising from the normal, inherent, and foreseeable risks of the chosen profession.

2. NEGLIGENCE — TORTS — FIRE FIGHTERS — POLICE OFFICERS — DAMAGES.

The rule that fire fighters or police officers may not recover damages for injuries occasioned by negligence which caused their presence in an official capacity on premises where the injury occurred does not extend to intentional abuse directed specifically at a police officer; the public policy of Michigan is against allowing criminals to benefit from their wrongdoing, therefore, a defendant should not receive the benefit of the fireman's rule to shield him from civil liability to an officer where the defendant's intentional actions are likely criminal acts upon the officer.

*Thomas W. Jakuc & Associates* (by *Thomas W. Jakuc*), for plaintiff.

*Romain, Donofrio, Kuck & Egerer, P.C.* (by *Claude Romain* and *John C. Brennan*), for defendants.

Before: BEASLEY, P.J., and GILLIS and BRENNAN, JJ.

PER CURIAM. Plaintiff appeals as of right from

the circuit court's order granting defendants' motion for summary disposition. We affirm in part and reverse in part.

On Tuesday, December 22, 1981, plaintiff's decedent, Center Line Police Officer William Rozenboom, was injured when he was shot by George Proper. Rozenboom later died of unrelated causes. George Proper was killed by other officers after shooting Rozenboom.

On the same day, defendant Laura Proper was petitioning the probate court to have George Proper, her husband, committed. George was seventy-one years old at the time of the shooting. He had been committed to a mental institution in Jacksonville, Florida, from March 1, through April 1, 1980, and to the Indiana State Hospital from June 6, through September 3, 1980. On December 17, 1981, George became paranoid and locked himself inside the Propers' apartment with a loaded deer rifle and a shotgun. George was stating that the "Mafia and police [were] out to get him" and telling Laura to "call the FBI to come and get us out of here." George told Laura that "I'll get one of them before they get me." George then sent Laura out of the apartment because "they'll get you, too." George told Laura not to call him because "they" had the telephone bugged, would trace the call and find her. George also believed that the apartment was bugged and warned Laura to stay away from the car because it was "wired." Laura feared that George would shoot a uniformed police officer if one came to the door.

George also called various friends and asked that they call another friend in Washington, D.C., and have him call the FBI for help. George told the friends that he had guns and would shoot through the door or window.

On Saturday, December 19, George admitted a

friend to his apartment and the friend observed three guns in the apartment.

Before noon on Tuesday, December 22, the comanager of the apartment complex went to check on a soliciting complaint in George's building. On the way there, another tenant told the comanager that there was a man with a gun. The comanager then saw George, who was wearing red long johns, with a rifle. The comanager, the tenant and a maintenance man, who came upon the scene, hid behind a trash can and George began firing. The comanager then went to another building and telephoned the police, reporting a man shooting a gun.

Rozenboom, who was on duty, heard a dispatch concerning a man with a gun at the apartment complex. Rozenboom was the second officer to arrive at the scene. He heard shots as he approached and the radio dispatcher indicated that shots were fired.

After being informed by the first officer that George was back inside an apartment, Rozenboom retrieved two empty shell casings. Rozenboom determined that George had a .30-'06, a high-powered rifle. Rozenboom warned the other officer about the weapon.

George then opened the door and started to come out of the apartment with the rifle. Rozenboom, who had been pressed up against a wall near the door, turned toward George with his weapon in his hand and told George to freeze. Rozenboom recalled that George's attire was "funny," but could not remember what was "funny" about it.

George then jumped back inside and shut the apartment door. Rozenboom thought that he had pressed himself flat against the building, but George shot through the opaque-type window

which surrounded the door and hit Rozenboom's badge. The bullet then deflected into Rozenboom's left arm, doing extensive damage.

It was later learned that George had threatened to shoot a United Parcel Service employee who was delivering a package. This incident was not reported to the police.

An autopsy revealed that George suffered from hardening of the arteries and shrinkage of his brain, which may have caused his mental difficulties.

At the time defendants filed their motion for summary disposition, plaintiff's remaining claims were against George's estate for the assault and battery by George and against Laura for negligence. The claim against Laura was based upon a theory that she voluntarily assumed control over George, a known dangerous person. In particular, plaintiff alleged that (1) Laura failed to remove weapons and ammunition from the apartment knowing that George had threatened to shoot people, including police officers, (2) Laura left the apartment on December 17, knowing George had threatened to cause injury to persons, including police officers, and had the ability to carry out his threats, and (3) Laura had aggravated George's condition by calling him and warning him that, if he did not voluntarily seek psychiatric help, she would have him committed.

Defendants moved for summary disposition, alleging that plaintiff's claims were barred by the fireman's rule. MCR 2.116(C)(8) and (10).

In *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347, 372; 415 NW2d 178 (1987), our Supreme Court adopted the fireman's rule, holding:

Thus, as a matter of public policy, we hold that

fire fighters or police officers may not recover for injuries occasioned by the negligence which caused their presence on the premises in their professional capacities. This includes injuries arising from the normal, inherent, and foreseeable risks of the chosen profession.

The Court noted that the rule had its origin in a fireman's suit against a property owner, where the fireman was held to be a licensee, thereby placing a duty on the property owner to refrain from wilful, wanton or intentional injury. *Id.* at 358-359. Eventually, the courts became dissatisfied with determining a landowner's liability to a fire fighter because of the inherent problems in classifying a fire fighter as an invitee or licensee. *Id.* at 359-360. Our Supreme Court then noted that recent decisions adopted the fireman's rule on the basis of primary assumption of the risk and public policy. *Id.* at 360. Our Supreme Court declined to decide whether the defense of primary assumption of the risk applied because it held the public policy arguments supporting adoption of the rule to be sufficient. *Id.* at 365. The Court first noted that fire fighters and police officers were hired, trained and compensated by the public to deal with dangerous, but inevitable, situations generally caused by negligence. *Id.* at 366. Hence, it would offend " 'public policy to say that a citizen invites private liability merely because he happens to create a need for those public services.' " *Id.* at 366-367 (quoting *Pottebaum v Hinds,* 347 NW2d 642, 645 [Iowa, 1984]). Our Supreme Court also noted that it was unreasonable to require landowners to prepare their premises for the arrival of police officers or fire fighters where their presence was unpredictable and they might need to enter portions of the premises not usually open to the public. *Id.* at 368-369. Finally, our Supreme Court noted that work-

ers' compensation is available for police officers and fire fighters injured in the course of their employment, thereby spreading the cost of injuries to the public as a whole rather than upon individual property owners. *Id.* at 369-370.

Our Supreme Court also held that the fireman's rule should not be limited to the landowner/occupier context and that it extended to negligence which caused the need for the presence of the police officer or fire fighter. *Id.* at 374-377. However, the Court declined to further delineate the precise parameters of the rule, noting there were no allegations of intentional misconduct before it. *Id.* at 370-371.

Here, the plaintiff argued that the fireman's rule should not apply to intentional torts (i.e., the assault and battery claim against George's estate) or to the negligence claim against Laura. The circuit court ruled upon the motion under MCR 2.116(C)(10) because the parties relied upon facts outside of their pleadings to support their positions. The circuit court then held that the claim against Laura was barred under the fireman's rule because her alleged negligence caused Rozenboom's presence on the premises in his professional capacity and the injury was a normal, inherent, and foreseeable risk of Rozenboom's professional duty. The circuit court also found that plaintiff's claim against George's estate was barred under the fireman's rule. The circuit court relied on *Lenthall v Maxwell,* 138 Cal App 3d 716; 188 Cal Rptr 260 (1982). See also *Los Angeles v O'Brian,* 154 Cal App 3d 904; 201 Cal Rptr 561 (1984).

In *Lenthall,* the plaintiff, an on-duty police officer, responded to the defendant's home because of a report involving a family with weapons, where shots may have been fired. After the police officer arrived, defendant shot him. The plaintiff then

sued the defendant, alleging intentional injury. The majority in *Lenthall, supra* at 719, held:

> Our reading of the cases cited to us leads us to conclude as follows: (1) The [fireman's] rule does not apply to injuries inflicted by an independent *actor* not connected with the event bringing the officer to the place of injury; (2) the rule does not apply to injuries caused by conduct which the officer could not reasonably anticipate would occur by reason of his presence at the place of injury; (3) but that the rule does apply to injuries inflicted by a participant in the event bringing the officer to the place of injury and the act causing the injury is one which the officer should reasonably expect to occur while he was engaged in the duty bringing him to the place of injury.
>
> As applied to the case before us, a police officer called to subdue a violent offense involving firearms, should reasonably anticipate that one of the persons whom he was called on to subdue might resist him by use of the firearms involved. [Emphasis in original.]

See also *Los Angeles, supra,* where the fireman's rule was held to preclude suit by a police officer, who was trailing the defendant, a criminal suspect, when the defendant intentionally backed his van into the officer's marked patrol car, injuring the officer.

Associate Justice McClosky dissented in *Lenthall,* noting that no California case had ever extended the fireman's rule to injury caused by an intentional act which brought the fire fighter or police officer to the place of the injury and that he saw no reason in law or public policy to extend the benefits of the rule to such tortfeasors. *Lenthall, supra* at 719. In part, Justice McClosky noted that treating fire fighters and policemen as though they voluntarily assumed such risks "was almost al-

ways a myth" because they were required by their
employment to incur such risks. *Id.* at 720.

On appeal, the plaintiff here contends that our
Supreme Court's opinion in *Kreski, supra,* indi-
cates that it would not apply the fireman's rule to
an intentional tortfeasor whose acts required the
officer's presence on the premises. Defendants dis-
agree, noting that our Supreme Court held that
primary assumption of the risk was viable in
Michigan. *Id.* at 365.

We hold that the fireman's rule does not pre-
clude Rozenboom's suit against George's estate. In
doing so, we agree with the following remarks
from *Berko v Freda,* 93 NJ 81, 90; 459 A2d 663,
667-668 (1983):

> [S]ince police fight crime, they must expect an
> occasional encounter with violence. Why then
> should they be permitted to sue a thief for per-
> sonal injuries when they have assumed the risk
> that the thief might fight back? We resolve this
> paradox by observing that the public policy under-
> lying the "fireman's rule" simply does not extend
> to intentional abuse directed specifically at a po-
> lice officer. "To permit this would be to counte-
> nance unlimited violence directed at the policeman
> in the course of most routine duties. Certainly the
> policeman and his employer should have some
> private recourse for injuries so blatantly and crim-
> inally inflicted." *Krueger v City of Anaheim* [130
> Cal App 3d 166, 170; 181 Cal Rptr 631, 634 (1982)].
> No fundamental unfairness results from allowing
> an officer to sue a criminal. The crook does not
> summon the police for help. While the police are
> paid to risk being assaulted, they are not paid to
> submit to a criminal assault.

We further believe that the public should not be
required to bear, through workers' compensation,
the entire expense of safety officers' injuries when

they result from an individual's intentional acts. Moreover, in cases where the defendant's intentional actions will likely be found to be criminal acts upon the officer, the defendant should not receive the benefit of the fireman's rule to shield him from civil liability. Michigan has long had a public policy against allowing criminals to benefit from their wrongdoing. See, e.g., MCL 333.7521 *et seq.* and 700.251; MSA 14.15(7521) *et seq.* and 27.5251. Hence, we hold that the circuit court improperly granted summary disposition to the estate of George Proper. Nonetheless, we hold that summary disposition was correctly granted as to defendant Laura Proper for the reasons stated by the circuit court. *Kreski, supra* at 374-377.

Affirmed in part and reversed in part.