McCAW v T & L OPERATIONS, INC

Docket No. 181804. Submitted March 5, 1996, at Detroit. Decided June 11, 1996, at 9:20 A.M. Leave to appeal sought.

Daniel and Toni McCaw brought an action in the Oakland Circuit Court against T & L Operations, Inc., and Michael K. Williams, seeking damages for injuries sustained when Daniel McCaw (hereafter plaintiff), a police officer, was attacked by Williams at Williams' house when the plaintiff was dispatched to investigate a reported stabbing at the house. The claim against Williams, who admitted that he was not sober during the altercation with the plaintiff, was based on negligence, and a default was subsequently entered against him. The claim against T & L Operations (hereafter defendant) was based on the defendant's alleged violation of the dramshop act for having served alcohol to Williams on the day of the incident when Williams was both underage and visibly intoxicated. The trial court, David F. Breck, J., denied the defendant's motion for summary disposition that alleged that the claim was barred by the fireman's rule, reasoning that because a violation of the dramshop act is a statutory violation, the defendant could not rely on the common-law defense of the fireman's rule. A jury returned a verdict for the plaintiffs, and the court entered orders granting a judgment consistent with the verdict and awarding the plaintiffs costs and attorney fees. The defendant appealed.

The Court of Appeals *held*:

1. The trial court erred in finding that the fireman's rule does not bar a dramshop action by a police officer when the officer's damages are sustained in the course of duty. The pivotal question is not whether the defense is based on the common law, but, rather, whether the purpose behind the dramshop act is directly implicated by the defense.

2. An injury suffered by a police officer while dealing with a drunk and disorderly person during the course of duty flows directly from the performance of police duties and directly implicates the policy considerations behind the Supreme Court's adoption of the fireman's rule.

3. The fact that the Legislature did not amend the dramshop act to include police officers and fire fighters when the Legislature

amended the act two years after the Supreme Court had adopted the fireman's rule indicates that the Legislature did not object to the application of the fireman's rule to dramshop actions. The orders granting the judgment for the plaintiffs and awarding them costs and attorney fees must be reversed.

Reversed.

1. NEGLIGENCE — POLICE OFFICERS — FIREMAN'S RULE.

The fireman's rule provides that fire fighters and police officers may not recover damages for injuries arising out of the risks inherent in their respective professions; the analytical focus is whether the injury stems directly from the safety officer's functions.

2. INTOXICATING LIQUORS — DRAMSHOP ACTIONS — DEFENSES.

The pivotal question in determining whether a defense is applicable in a statutory dramshop action is not whether the defense is based on the common law, but, rather, whether the purpose behind the dramshop act is directly implicated by the defense (MCL 436.22; MSA 18.993).

3. NEGLIGENCE — POLICE OFFICERS — FIREMAN'S RULE — DRAMSHOP ACTIONS — DEFENSES.

The fireman's rule bars a dramshop action by a police officer when the officer's injuries are sustained in the course of duty; the policy considerations behind the Supreme Court's adoption of the fireman's rule are directly implicated where a police officer's injury flows directly from the performance of police duties (MCL 436.22; MSA 18.993).

4. NEGLIGENCE — POLICE OFFICERS — FIREMAN'S RULE — DRAMSHOP ACTIONS — DEFENSES.

The fact that the Legislature amended the dramshop act two years after the Supreme Court had adopted the fireman's rule but did not include police officers and fire fighters injured in the course of their duties within the class of persons entitled to recover in a dramshop action indicates that the Legislature did not object to the application of the fireman's rule in dramshop actions (MCL 436.22; MSA 18.993).

*Raymond L. Krell, P.C.* (by *Derek A. Hurt*), for the plaintiffs.

*Kallas & Henk, P.C.* (by *Edward J. Lee*), for T & L Operations, Inc.

Before: MacKENZIE, P.J., and CAVANAGH and T. L. LUD-
INGTON,* JJ.

CAVANAGH, J. Defendant T & L Operations, Inc.,
appeals as of right a jury verdict for plaintiffs in this
dramshop action. We reverse.

Plaintiff Daniel McCaw[1] is a police officer with the
Waterford Township Police Department. During the
evening of August 31, 1991, plaintiff was dispatched
to investigate a reported stabbing at a house on Hira
Street. When plaintiff arrived at the residence, he saw
a man lying on the front lawn and realized that the
man had been stabbed. A man, later identified as
Michael Williams, came out on the porch. Because of
Williams' behavior, slurred speech, and bloodshot,
glassy eyes, plaintiff realized that he was under the
influence of alcohol. Williams told plaintiff that he
had called the police. When plaintiff attempted to
question Williams about the stabbing, Williams
became agitated and began to yell at plaintiff. Wil-
liams told plaintiff to leave, but plaintiff refused. Wil-
liams then informed plaintiff that he was going to
leave. Plaintiff stepped in front of Williams to prevent
him from departing. Williams began to attack plaintiff.
During the ensuing scuffle, Williams struck plaintiff in
the face. As a result of this incident, plaintiff suffers
from blurred peripheral vision, tinnitus, and an injury
to his jaw.

At trial, Williams testified that on August 31, 1991,
he was nineteen years old. On that day, he began

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Toni McCaw, Daniel McCaw's wife, joins him as plaintiff. Because her
loss of consortium claim is derivative and dependent on Mr. McCaw's
claim, and to avoid confusion, we will refer only to plaintiff Daniel
McCaw.

drinking beer around 3:00 P.M. Around 6:00 P.M., Williams and two friends, Jeff Morgan and Tim Smith, went to the Dixie Bar. At the bar, the three men shared several pitchers of beer and consumed three to five B-52 shots.[2] Williams testified that he was feeling drunk while in the bar. After the men left the bar, Morgan and Smith began to argue. When the men arrived at Williams' house, Williams went inside and fell asleep or passed out. After Williams awoke, Morgan told him that he had stabbed Smith. Williams then called 911. Williams stated that he was not sober during the altercation with plaintiff.

On February 8, 1993, plaintiff filed suit against Williams and the owner and operator of the Dixie Bar, T & L Operations, Inc. (hereafter defendant), to recover for the injuries suffered in the incident. The claim against Williams was based on negligence and alleged that Williams acted in a "wilful, wanton and reckless manner." The claim against defendant was based on multiple violations of the dramshop act, MCL 436.22; MSA 18.993. Specifically, plaintiff alleged that defendant served alcohol to Williams when the latter was both underage and visibly intoxicated.

On February 23, 1994, defendant filed a motion for summary disposition alleging that plaintiff's claim was barred by the fireman's rule. The trial court denied the motion, reasoning that because a violation of the dramshop act is a statutory violation, defendant could not rely on the common-law defense of the fireman's rule.

---

[2] A B-52 contains Grand Marnier, Kahlúa, and Baileys Original Irish Cream.

On July 21, 1994, a default was entered against Williams. Williams participated in the subsequent trial only as a witness and is not involved in this appeal.

Soon after, the case was tried before a jury. After the close of plaintiff's proofs, defendant moved for a directed verdict on the basis that the fireman's rule barred plaintiff's claim and because plaintiff failed to show that the dramshop violation was a proximate cause of plaintiff's injuries. The trial court denied the motion as it related to the fireman's rule and allowed plaintiff to recall Williams to establish the element of proximate cause. On August 1, 1994, the jury returned a verdict for plaintiff. Plaintiff was awarded $121,689.89, and plaintiff's wife was awarded $25,000 for her loss of consortium claim. The trial court later granted plaintiff's motion for an award of costs and attorney fees and denied defendant's motion for judgment notwithstanding the verdict.

On appeal, defendant argues that the trial court erred in ruling that the fireman's rule does not apply to cases involving the dramshop act. This is a question of law that we review de novo. *Rapistan Corp v Michaels*, 203 Mich App 301, 306; 511 NW2d 918 (1994).

The fireman's rule was adopted by the Supreme Court in *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347; 415 NW2d 178 (1987). The fireman's rule provides that a fire fighter or police officer may not recover damages from a private party for negligence in the creation of the reason for the safety officer's presence. *Id.* at 358. In other words, fire fighters and police officers may not recover damages for injuries arising out of risks inherent in their respective professions. *Id.* at 351. The Supreme Court

adopted the rule on the basis of public policy consid-
erations. The Court explained:

> The policy arguments for adopting a fireman's rule stem
> from the nature of the service provided by fire fighters and
> police officers, as well as the relationship between these
> safety officers and the public they are employed to protect.
>
> It is beyond peradventure that the maintenance of organ-
> ized society requires the presence and protection of fire
> fighters and police officers. The fact is that situations
> requiring their presence are as inevitable as anything in life
> can be. It is apparent that these officers are employed for
> the benefit of society in general, and for people involved in
> circumstances requiring their presence in particular. [*Id.* at
> 365-366.]

The Supreme Court noted that worker's compensa-
tion benefits are available to public safety officers for
injuries suffered during the course of their employ-
ment. Thus, the cost of injuries to safety officers falls
upon the public as a whole rather than on individuals.
*Id.* at 369.

The Supreme Court again addressed the fireman's
rule in *Woods v City of Warren*, 439 Mich 186; 482
NW2d 696 (1992). In *Woods*, the plaintiff, a police
officer, brought suit against the City of Warren for
injuries sustained during a high-speed chase. The
plaintiff claimed that the city had failed to maintain
its roads in a safe condition as required by MCL
691.1402; MSA 3.996(102). The Supreme Court held
that the fireman's rule applied because the plaintiff's
injury flowed directly from the performance of his
police duties. The Court explained that the analytical
focus must be on whether the injury stems directly
from an officer's police functions. If the circum-
stances indicate that it does, the fireman's rule

applies. If the circumstances indicate otherwise, it likely does not. *Woods, supra* at 192-193.

In the present case, the trial court held that the fireman's rule, a common-law defense, was inapplicable in a statutory cause of action such as a dramshop action. The trial court based its ruling on this Court's decision in *Barrett v Campbell,* 131 Mich App 552; 345 NW2d 614 (1983). In *Barrett,* this Court held that the doctrine of comparative negligence does not apply to a statutory dramshop action when the noninnocent-party doctrine[3] is implicated. *Id.* at 557.

We conclude that the trial court erred. This Court has also held that the defense of comparative negligence *does* apply in a dramshop action when the plaintiff's fault does not involve participation in bringing about the intoxication of the person who injured him. See *Lyman v Bavar Co, Inc,* 136 Mich App 407, 410; 356 NW2d 28 (1984). Thus, the pivotal question is not whether the defense is based on the common law, but, rather, whether the purpose behind the dramshop act is directly implicated by the defense.

Moreover, the fireman's rule applies to other statutory causes of action. As previously discussed, the Supreme Court held in *Woods, supra,* that the fireman's rule could be applied in a case involving the

---

[3] Under the noninnocent-party doctrine, one who actively brings about another's intoxication may not recover for injuries sustained therefrom. *Craig v Larson,* 432 Mich 346, 354; 439 NW2d 899 (1989). Defendant argues that the trial court's reasoning was flawed because in *Barrett, supra,* this Court upheld the noninnocent-party doctrine, another common-law bar to recovery under the dramshop act. However, the noninnocent-party doctrine is not a creature of the common law, nor is it based on common-law negligence principles. Rather, the doctrine is a defense to a dramshop action gleaned from the *intent* of the Legislature in adopting and amending the dramshop act. *Arbelius v Poletti,* 188 Mich App 14, 22-23; 469 NW2d 436 (1991).

statutorily created highway exception to governmental immunity.

This Court recently addressed the fireman's rule in *Mariin v Fleur, Inc*, 208 Mich App 631; 528 NW2d 218 (1995), lv gtd 450 Mich 961 (1996). In *Mariin*, an off-duty police officer was socializing in a bar. Another patron in the bar attacked the officer, who suffered injuries as a result. This Court held that the fireman's rule did not bar the police officer's dramshop action against the bar because the plaintiff's presence in the bar was not related to his duties as a police officer. The *Mariin* panel stated in dicta that it might be appropriate to apply the fireman's rule if the police officer had been dispatched to the bar in question while on duty. *Id.* at 636-637.

While the *Mariin* panel's comments are not binding in this case, we nevertheless agree that the fireman's rule bars a dramshop action by a police officer when the officer's damages are sustained in the course of his duties. Police officers are not infrequently required to deal with drunk and disorderly persons. An injury suffered by a police officer in such a circumstance flows directly from the performance of his police duties. See *Woods, supra* at 192-193. Accordingly, the policy considerations behind the Supreme Court's adoption of the fireman's rule are directly implicated. See *Kreski, supra* at 365-366. In addition, as the Minnesota Supreme Court observed in a similar case:

> If police officers are allowed to recover under the statute, bar owners might be inhibited from summoning the police for aid in disturbances and, instead, would resort to self-help measures, creating additional risk to the public. It would not be in the public interest to discourage bar own-

ers from calling upon those who are trained and employed to deal with these situations. [*Hannah v Jensen*, 298 NW2d 52, 55 (Minn, 1980).[4]]

Plaintiff points out that the dramshop act provides a right of recovery to a particular class of persons, namely, individuals who suffer injury after alcohol is unlawfully furnished to a minor or to a visibly intoxicated person.[5] Plaintiff argues that because the Legislature amended the dramshop act two years after the Supreme Court's decision in *Kreski* without excluding public safety officers from the class of persons entitled to recovery under the act, the fireman's rule should not be applied in dramshop actions. However, the Legislature is presumed to act with knowledge of appellate court statutory interpretations. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991). Silence by the Legislature following judicial construction of a statute suggests consent to that construction. See *Craig v Larson*, 432 Mich 346, 353; 439 NW2d 899 (1989). Thus, contrary to plaintiff's assertion, the fact that the Legislature did not amend the dramshop act to include police officers and fire fighters after the Supreme Court adopted the fireman's rule indicates that the Legislature did not object to the application of the fireman's rule to dramshop actions.

Because we conclude that plaintiff's claim is barred by the fireman's rule, we reverse the jury verdict for plaintiff. We also reverse the order awarding plaintiff costs and attorney fees. Our resolution of the previ-

---

[4] The holding in *Hannah* was subsequently superseded by the Minnesota Legislature. See *Lang v Glusica*, 393 NW2d 181, 183, n 1 (Minn, 1986).

[5] See MCL 436.22(4); MSA 18.993(4).

ous issue renders it unnecessary for us to address defendant's other issues.

Reversed.