McCAW v T & L OPERATIONS, INC (ON REMAND)

Docket No. 206722. Submitted October 10, 1997, at Lansing. Decided June 23, 1998, at 9:05 A.M. Leave to appeal sought.

Daniel and Toni McCaw brought an action in the Oakland Circuit Court against T & L Operations, Inc., and Michael K. Williams, seeking damages for injuries sustained when Daniel McCaw (hereafter plaintiff), a police officer, was attacked by Williams at Williams' house when the plaintiff was dispatched to investigate a reported stabbing at the house. The claim against Williams, who admitted that he was not sober during the altercation with the plaintiff, was based on negligence, and a default was subsequently entered against him. The claim against T & L Operations (hereafter defendant) was based on the defendant's alleged violation of the dramshop act for having served alcohol to Williams on the day of the incident when Williams was both underage and visibly intoxicated. The trial court, David F. Breck, J., denied the defendant's motion for summary disposition that alleged that the claim was barred by the fireman's rule. A jury returned a verdict for the plaintiffs, and the court entered orders granting a judgment consistent with the verdict and awarding the plaintiffs costs and attorney fees. The defendant appealed. The Court of Appeals held that the plaintiff's claim was barred by the fireman's rule, reversed the order granting the judgment for the plaintiffs, and reversed the order awarding the plaintiffs costs and attorney fees. 217 Mich App 181 (1996). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for reconsideration in light of its decision in the consolidated cases *Gibbons v Caraway* and *Mariin v Fleur, Inc*, 455 Mich 314 (1997). 456 Mich 869 (1997).

On remand, the Court of Appeals *held*:

1. The injuries to the plaintiff resulted from Williams' wilful, wanton, reckless, or grossly negligent behavior. Williams was not a third party unconnected to the situation that brought the plaintiff to the scene, and he injured the plaintiff when the plaintiff attempted to prevent Williams from leaving the scene. The situation presented in this case is distinguishable from that in *Gibbons*, where the defendant driver struck the plaintiff police officer with her vehicle as the officer was directing traffic following an unrelated accident. Here, Williams' wrongdoing was not unconnected to

the situation that brought the plaintiff to the scene. *Gibbons* does not preclude application of the fireman's rule in this case.

2. The policy rationales behind the fireman's rule are applicable in this case. Because the purpose of safety professions is to confront danger, the public should not be liable for damages for injuries that occur in the performance of the very functions that police officers and fire fighters are intended to fulfill. Police officers and fire fighters are trained to deal with the hazards of their respective professions, and worker's compensation benefits are available to them when they are injured in the course of their employment. An additional policy consideration arises in this case where the plaintiff's claim against the defendant is based not on injuries directly inflicted on the plaintiff by the defendant, but rather on the defendant's violations of the dramshop act. If the fireman's rule did not apply here, dramshop owners might hesitate to summon the police for aid in disturbances and instead resort to self-help measures, creating additional risk to the public.

3. The orders granting a judgment consistent with the jury verdict in favor of the plaintiffs and awarding the plaintiffs costs and attorney fees must be reversed.

Reversed.

WHITE, J., dissenting, stated that application of the principles affirmed in *Gibbons* (i.e., that the rule generally applies to injuries derived from the negligence causing the safety officer's presence and also to those stemming from the normal risks of the profession and that the rule is to be applied flexibly as the circumstances require to flexibly address the different fact patterns as they are presented, recognizing individual exceptions in appropriate situations when the fundamental policy rationale is inapplicable) requires a finding that the policy rationales behind the rule are inapplicable in this case and the trial court's orders therefore should be affirmed. The dramshop violation was unrelated to the reason the plaintiff was on the scene. The aspect of the rationale that seeks to encourage citizens to call safety officers for assistance without regard for their own negligence is not implicated. The part that focuses on injuries derived from the negligence requiring the officer's presence is inapplicable because the defendant's negligence (the dramshop violation) was unrelated to the plaintiff's presence at Williams' house. Being assaulted by Williams was not a normal, inherent, and foreseeable risk for the plaintiff, except in the most general sense. The aspect of the rationale regarding the training of safety officers to handle dangerous situations and compensating them to deal with the hazards created by taxpayer negligence and the shielding of citizens from damage

claims for injuries sustained as a result of carelessness or ordinary negligence encountered as a normal risk of the profession is inapplicable here, where the injury from acts of persons served in violation of the dramshop act is addressed by the legislative scheme requiring dramshop owners to maintain security for liability under the dramshop act. The dramshop owner is not in the same position as the citizen whose ordinary negligence causes injury to the officer.

1. Negligence — Police Officers — Fireman's Rule.

The fireman's rule bars a recovery for damages by a police officer or fire fighter for injuries derived from the negligence causing the safety officer's presence and those stemming from the normal, inherent, and foreseeable risks of the safety officer's profession; although the analytical focus is on whether the injury stems directly from the safety officer's professional functions, the rule may not apply in situations where the policy rationales for its adoption are inapplicable; the fireman's rule is not a license to act with impunity, without regard for the safety officer's well-being.

2. Negligence — Police Officers — Fireman's Rule.

The foundational policy rationale for the fireman's rule is that the purpose of the safety professions is to confront danger, and therefore, the public should not be liable for damages for injuries that occur in the performance of the very function police officers and fire fighters are intended to fulfill; additional rationales include the fact that public safety officers are trained to deal with the hazards of their respective professions and that worker's compensation benefits are available to public safety officers injured in the course of their employment.

*Raymond L. Krell, P.C.* (by *Derek A. Hurt*), for the plaintiffs.

*Kallas & Henk, P.C.* (by *Edward J. Lee*), for T & L Operations, Inc.

ON REMAND

Before: MacKenzie, P.J., and Cavanagh and White, JJ.

Cavanagh, J. This case is before us for the second time. In our first decision, we concluded that plaintiff

Daniel McCaw's[1] claim was barred by the fireman's rule and reversed. *McCaw v T & L Operations, Inc*, 217 Mich App 181; 550 NW2d 852 (1996). The Supreme Court, in lieu of granting leave to appeal, remanded the case for reconsideration in light of its decision in the consolidated cases *Gibbons v Caraway* and *Mariin v Fleur, Inc*, 455 Mich 314; 565 NW2d 663 (1997). 456 Mich 869 (1997). We again reverse.

The facts of this case were set out in our previous opinion:

> Plaintiff Daniel McCaw is a police officer with the Waterford Township Police Department. During the evening of August 31, 1991, plaintiff was dispatched to investigate a reported stabbing at a house on Hira Street. When plaintiff arrived at the residence, he saw a man lying on the front lawn and realized that the man had been stabbed. A man, later identified as Michael Williams, came out on the porch. Because of Williams' behavior, slurred speech, and bloodshot, glassy eyes, plaintiff realized that he was under the influence of alcohol. Williams told plaintiff that he had called the police. When plaintiff attempted to question Williams about the stabbing, Williams became agitated and began to yell at plaintiff. Williams told plaintiff to leave, but plaintiff refused. Williams then informed plaintiff that he was going to leave. Plaintiff stepped in front of Williams to prevent him from departing. Williams began to attack plaintiff. During the ensuing scuffle, Williams struck plaintiff in the face. As a result of this incident, plaintiff suffers from blurred peripheral vision, tinnitus, and an injury to his jaw.
>
> At trial, Williams testified that on August 31, 1991, he was nineteen years old. On that day, he began drinking beer around 3:00 P.M. Around 6:00 P.M., Williams and two friends,

---

[1] Toni McCaw, Daniel McCaw's wife, joins him as plaintiff. Because her loss of consortium claim is derivative and dependent on her husband's claim, and to avoid confusion, we will refer only to Daniel McCaw as plaintiff.

Jeff Morgan and Tim Smith, went to the Dixie Bar. At the bar, the three men shared several pitchers of beer and consumed three to five B-52 shots. Williams testified that he was feeling drunk while in the bar. After the men left the bar, Morgan and Smith began to argue. When the men arrived at Williams' house, Williams went inside and fell asleep or passed out. After Williams awoke, Morgan told him that he had stabbed Smith. Williams then called 911. Williams stated that he was not sober during the altercation with plaintiff.

On February 8, 1993, plaintiff filed suit against Williams and the owner and operator of the Dixie Bar, T & L Operations, Inc. (hereafter defendant), to recover for the injuries suffered in the incident. The claim against Williams was based on negligence and alleged that Williams acted in a "wilful, wanton and reckless manner." The claim against defendant was based on multiple violations of the dramshop act, MCL 436.22; MSA 18.993. Specifically, plaintiff alleged that defendant served alcohol to Williams when the latter was both underage and visibly intoxicated.

\*    \*    \*

On July 21, 1994, a default was entered against Williams. Williams participated in the subsequent trial only as a witness and is not involved in this appeal.

Soon after, the case was tried before a jury. After the close of plaintiff's proofs, defendant moved for a directed verdict on the basis that the fireman's rule barred plaintiff's claim and because plaintiff failed to show that the dramshop violation was a proximate cause of plaintiff's injuries. The trial court denied the motion as it related to the fireman's rule and allowed plaintiff to recall Williams to establish the element of proximate cause. On August 1, 1994, the jury returned a verdict for plaintiff. Plaintiff was awarded $121,689.89, and plaintiff's wife was awarded $25,000 for her loss of consortium claim. The trial court later granted plaintiff's motion for an award of costs and attorney fees and denied defendant's motion for judgment notwithstanding the verdict. [*McCaw, supra* at 183-185.]

The fireman's rule was adopted by the Supreme Court as a common-law rule in *Kreski v Modern Wholesale Electric Supply Co,* 429 Mich 347; 415 NW2d 178 (1987). The fireman's rule prevents police officers and fire fighters from recovering for injuries arising out of the risks of their respective professions. *Id.* at 351. The scope of the rule includes both negligence in causing the incident requiring a safety officer's presence and those risks inherent in fulfilling the police or fire fighting duties. *Id.* at 372.

The Court next addressed the application of the fireman's rule in *Woods v City of Warren,* 439 Mich 186, 190; 482 NW2d 696 (1992). In *Woods,* the Court explained that the rule bars recovery for two types of injury: "those derived from the negligence causing the safety officer's presence and those stemming from the normal risks of the safety officer's profession." *Id.* at 196. The analytical focus must be on whether the injury stems directly from the safety officer's professional functions. *Id.* at 193. Nevertheless, the fireman's rule may not apply in situations where the policy rationales for its adoption are inapplicable. *Id.* at 194, n 8.

The Supreme Court's recent decision in *Gibbons, supra,* involved two consolidated cases, *Gibbons v Caraway* and *Mariin v Fleur.* In *Mariin,* an off-duty police officer, dressed in civilian clothes, was socializing in a bar. The officer was injured when another patron in the bar recognized him as the one who had arrested the patron several years previously and attacked him. *Gibbons* at 319. A majority of the Court held that the fireman's rule did not bar the officer's claim because the connection between the injury was too attenuated from the exercise of his police func-

tion. See *id.* at 328 (Cavanagh, J.), 329 (Boyle, J.), 340-341 (Riley, J.).[2]

In *Gibbons*, a police officer directing traffic after an accident had occurred was injured when a third party driving along the road swerved and struck him. *Id.* at 317-318. The Court failed to produce a majority opinion in this case. However, five justices appear to agree that the fireman's rule does not bar a claim for damages for injuries caused by the subsequent wrongdoing of a third party unconnected to the situation that brought the officer to the scene, where the wrongdoing resulted from wanton, reckless, or grossly negligent behavior. See *id.* at 325-326 (Cavanagh, J.), 329-330 (Boyle, J.).

A majority of the *Gibbons* Court clearly agrees that the decision in *Woods, supra,* should be limited. See *id.* at 323-324 (Cavanagh, J.), 329 (Boyle, J.). However, the Court has not delineated the extent of the limitation. The five justices who agreed that the fireman's rule did not preclude recovery in *Gibbons* did not abandon the requirement in *Woods* that fire fighters and police officers may not recover for the normal, inherent, and foreseeable risks of their respective professions. These justices reconciled the result in *Gibbons* with *Woods* by reaching the somewhat counterintuitive conclusion that, for a police officer directing traffic at the scene of an accident, the danger of injury from a negligent or grossly negligent driver is not inherent in the risks of the profession.[3]

---

[2] Justice Weaver concurred only in the result because of her belief that the fireman's rule should be limited to premises liability. See *id.* at 334 (Weaver, J.).

[3] In her opinion in *Gibbons*, Justice Riley criticized the majority's conclusion that the danger of injury from a negligent driver for a police

See *id.* at 325 (CAVANAGH, J.); 330 (BOYLE, J.). Justice
CAVANAGH explained this result by quoting language
from *Kreski* stating that the " 'fireman's rule is not a
license to act with impunity, without regard for the
safety officer's well-being.' " See *id.* at 325 (CAVANAGH,
J.), quoting *Kreski, supra* at 372. Justice BOYLE con-
cluded that the injury in *Gibbons* should be compen-
sable because "there is no direct relationship between
the act that caused the injury and the act that occa-
sioned the officer's presence." See *Gibbons, supra* at
329 (BOYLE, J.).

In our opinion, there is an inherent inconsistency in
stating both that the fireman's rule bars recovery for
injuries stemming from the normal, inherent, and
foreseeable risks of the profession and that the fire-
man's rule "is not a license to act with impunity, with-
out regard for the safety officer's well-being."[4] *Kreski,
supra* at 372. In the context of police officers, it is
clear that the normal, inherent, and foreseeable risks
of the profession include confronting people who will
not only act without regard for their safety, but may
deliberately attempt to harm them. As the Supreme
Court noted in *Kreski*, "police officers cannot be cer-
tain what dangers surround them when investigating

---

officer directing traffic at the scene of an accident is not inherent in the
risks of the profession as a "fiction." *Id.* at 338 (RILEY, J.). Justice RILEY
further stated: "Because the fireman's rule was adopted by this Court as a
common-law rule, if we decide to rework the doctrine, we should not be
reluctant to expressly redefine when the rule applies, rather than attempt
to fit these facts into the preexisting rules established by *Kreski* and
*Woods.*" *Id.* at 338, n 2.

[4] We recognize that in the interim between the Supreme Court's deci-
sions in *Kreski* and *Woods*, two panels of this Court held that the fire-
man's rule did not preclude an action by an injured police officer against
an individual who either intentionally or wilfully and wantonly injured the
officer. See *McAtee v Guthrie*, 182 Mich App 215, 220; 451 NW2d 551
(1989); *Rozenboom v Proper*, 177 Mich App 49, 57; 441 NW2d 11 (1989).

a burglary." *Id.* at 378. Likewise, police officers cannot predict what they will encounter when responding to a report of a stabbing, as plaintiff did in the present case. *Gibbons* did not produce a majority rationale for resolving this contradiction.

Under the facts of the present case, it is clear that the injuries to plaintiff resulted from Williams' wilful, wanton, reckless, or grossly negligent behavior.[5] However, after considering *Gibbons*, we find dispositive the fact that Williams was not a third party unconnected to the situation that brought plaintiff to the scene. On the contrary, Williams was present at the scene where a man had been stabbed. It was therefore likely that Williams had either committed the stabbing or possessed important information about it. In fact, Williams had spent the day in the company of both the perpetrator of the stabbing and the victim, and he had summoned plaintiff to the scene by calling 911. Plaintiff was injured when Williams attacked him after he attempted to prevent Williams from leaving the scene. We find this situation distinguishable from that in *Gibbons*, where the defendant struck the plaintiff with her vehicle as the latter was directing traffic following an unrelated accident. We cannot conclude that Williams' wrongdoing was unconnected to the situation that brought plaintiff to the scene. It therefore does not appear that *Gibbons* precludes the application of the fireman's rule in the present case.

However, our analysis does not end there. We now examine the policy rationales behind the fireman's rule to see if they are applicable. See *Woods, supra* at 194, n 8. According to the *Kreski* Court,

---

[5] Plaintiff has not alleged that Williams acted intentionally.

the foundational policy rationale [is] that the purpose of safety professions is to confront danger and, therefore, the public should not be liable for damages for injuries occurring in the performance of the very function police officers and fire fighters are intended to fulfill. [*Kreski, supra* at 368.]

In adopting the rule, the Court also cited the facts that police officers and fire fighters are trained to deal with the hazards of their respective professions and that worker's compensation benefits are available to police officers and fire fighters injured in the course of their employment. See *id.* at 366, 369. These policy rationales are all applicable in the instant case.

Our decision is also influenced by an additional policy consideration, mentioned in our previous opinion. Plaintiff's claim against defendant is based not on injuries directly inflicted on plaintiff by defendant, but rather on violations of the dramshop act. If the fireman's rule did not apply here, bar owners might hesitate to summon the police for aid in disturbances and instead resort to self-help measures, creating additional risk to the public. See *McCaw, supra* at 188-189.

For the foregoing reasons, we conclude that plaintiff's claim is barred by the fireman's rule. We therefore reverse the order granting a judgment consistent with the jury verdict in favor of plaintiff. We also reverse the order awarding plaintiff costs and attorney fees. Our resolution of this issue renders it unnecessary for us to address defendant's other issues.

Reversed.

MacKenzie, P.J., concurred.

White, J. (*dissenting*). I do not address plaintiffs' argument that the fireman's rule is generally inapplicable to statutory actions under the dramshop act, MCL 436.22; MSA 18.993, because that question was decided adversely to plaintiffs in this Court's initial opinion and the Supreme Court's remand to this Court was solely for the purpose of reconsidering the case in light of *Gibbons v Caraway* and *Mariin v Fleur, Inc*, 455 Mich 314; 565 NW2d 663 (1997).

In *Gibbons*, the Supreme Court discussed its previous decisions applying the fireman's rule and reaffirmed the Court's recognition in *Woods v City of Warren*, 439 Mich 186; 482 NW2d 696 (1992), that the rule generally applies to injuries derived from the negligence causing the safety officer's presence and also to those stemming from the normal risks of the profession, but is to be applied "flexibly as circumstances require[]" to "flexibly address the different fact patterns as they are presented," recognizing "individual exceptions in appropriate situations" when the "fundamental policy rationale is inapplicable." *Gibbons*, at 322-323 (citations omitted). Applying these principles to the instant case, I would hold that the policy rationales are inapplicable and affirm.

The dramshop violation was unrelated to the reason plaintiff Daniel McCaw (plaintiff) was on the scene. Plaintiff was not called to the scene by a bar owner seeking assistance in dealing with a disorderly patron, called regarding a disturbance created by an intoxicated person, or called to the scene of an accident involving a drunk driver. Rather, he was called to investigate a stabbing involving two persons other than Williams. Thus, the aspect of the policy rationale that seeks to encourage citizens to call safety officers

for assistance without regard to their own negligence is not implicated, and the prong of the test that focuses on injuries derived from the negligence requiring the officer's presence is inapplicable because defendant's "negligence" (statutory violation) was unrelated to plaintiff's presence. Additionally, except in the most general sense, being assaulted by Williams was not a normal, inherent, and foreseeable risk. Williams' intoxication was peripheral to plaintiff's performance of his duties.

Further, the aspect of the policy rationale for the fireman's rule that recognizes that safety officers are trained at taxpayer expense to handle dangerous situations and are compensated at taxpayer expense to deal with hazards created by taxpayer negligence, and therefore shields citizens from damage claims for injuries sustained by officers as a result of carelessness or ordinary negligence encountered as a normal risk of the profession, *Gibbons*, at 321 (CAVANAGH, J.), 331 (BOYLE, J), is inapplicable to the instant situation where the risk of injury from the acts of persons served in violation of the dramshop act is specifically addressed by a legislative scheme that requires that the dramshop owner maintain security for liability under the dramshop act.[1] The dramshop owner is not

---

[1] I recognize that the same argument might be made regarding automobile accidents involving officers on the basis of the legislative requirements for security under the no-fault act. However, in such cases a different aspect of the policy favoring application of the fireman's rule is operative because, as observed by Justice BOYLE in *Gibbons*, the situation that required the officer's presence often creates the added risk that a third party unrelated to the situation will be distracted or inattentive and negligently cause injury to an officer at the scene. *Gibbons*, at 331 (BOYLE, J.). In such cases, the third-party driver may be excused from liability to the officer at the scene in the line of duty where that very situation provides the occasion for the third party's negligence. The instant case presents a

in the same position as the citizen whose ordinary negligence causes injury to the officer.

I would affirm.

---

different fact pattern. Defendant's violation of the dramshop act was wholly independent of, preceded, and was in no way caused by the situation that led to plaintiff's presence on the scene in the exercise of his duties as an officer.